

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00521-CV

**MEDINA INTERESTS, LTD.**,
Appellant

v.

William Paul **TRIAL**, et al.,
Appellees

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 13-04-00098-CVK
Honorable Stella Saxon, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 24, 2015

AFFIRMED

In this appeal, we must construe a 1949 deed to determine whether the six grantors reserved

unto themselves an undivided interest in a fixed royalty or a floating royalty.  The parties filed

competing motions for summary judgment on this issue.  The trial court denied appellant's motion

for summary judgment, and granted appellees' motion for summary judgment stating the grantees

each received a floating royalty interest.  We affirm.

**BACKGROUND**

The underlying facts are not disputed. Annie Trial and her eight children owned the entire surface and mineral estates in a 278-acre tract of land located in Karnes County, Texas. By warranty deed dated September 1, 1949 ("the deed"), Mrs. Trial and six of her children[1] sold all their "right, title and interest in and to" the 278-acre tract of land to Alex Trial and Leo Trial, Mrs. Trial's two other children. The deed reserves to the six children, but not Mrs. Trial, an "undivided interest in and to the 1/8 royalties paid the land owner upon production of oil, gas and other minerals from said 278 acre tract of land." The deed does not specifically mention the royalty shares belonging to Alex and Leo, but there is no dispute that they each retained their undivided interest in and to the 1/8 royalties paid the land owner upon production of oil, gas and other minerals from the 278-acre tract of land.

It is the interpretation of the reservation language that is disputed in this case. Medina Interests, Ltd. ("Medina") is the successor-in-interest to Alex and Leo; and the appellees are the successors-in-interest to each of the six children named in the deed. In 2007, "Paid-Up Oil, Gas and Mineral Leases" were negotiated on the property.[2] Marathon Oil EL LLC acquired a portion of each lease. In August 2012, Marathon sent to Medina two "Stipulations of Mineral Interest," one for each portion of the property. Medina disputed how the royalty interests were calculated based on Marathon's interpretation of the 1949 deed. According to Medina, Marathon interpreted the deed as reserving to the parties "all of the royalties of leases entered into subsequent to the date of the 1949 Deed even though the reservation language in the 1949 Deed clearly refers to a reservation of "the 1/8 royalty interest."

---

[1] Albertine, William, Valentine, Ernest, Louise, and Augustine.

[2] Two leases were executed because Alex and Leo later partitioned the property. These leases are not in dispute, are not contained in the record, and no other details about the leases are known.

Medina sued appellees, asserting a claim for trespass to try title and a claim for money had and received. In its trespass to try title claim, Medina requested a judgment that the royalty interest reserved in the deed comprised only an undivided 6/8th interest in a 1/8th royalty. In other words, Medina argued the six children named as grantors shared a fixed 1/8th royalty. Appellees countersued and asked for a judgment that they each reserved a 1/8th royalty interest out of an 8/8ths of the royalty. The parties each filed motions for summary judgment. The trial court denied Medina's motion, granted appellees' motion, and stated in its summary judgment order that the deed "reserved the following shares of the royalties paid under any current and future oil, gas or mineral leases as follows: for each of the eight children "1/8th Floating Royalty Interest" and for Mrs. Trial "zero (00.00) Interest."[3]

## STANDARD OF REVIEW

When both parties file motions for summary judgment, each party must carry its burden and neither party may prevail because the other failed to discharge its own burden. *Pratt v. Amrex, Inc.*, 354 S.W.3d 502, 505 (Tex. App.—San Antonio 2011, pet. denied). When one of the motions for summary judgment is granted and the other is denied, we will determine all questions presented to the trial court. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). We will affirm or reverse the judgment and render the judgment the trial court should have rendered, including judgment for the movant who lost below. *Id.* In this case, each party moved for a traditional summary judgment.

A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor

---

[3] At this point, Medina's money had and received claim became moot.

of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

On appeal, Medina asserts there is only a single issue for this court to decide, and that is whether the six grantors reserved unto themselves an undivided interest in a fixed 1/8 royalty or a floating royalty.[4] The parties assert the deed is unambiguous, although they offer competing constructions of the reserved royalty interest. An oil and gas deed is a contract and must be interpreted as a contract. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005); *Chesapeake Exploration, L.L.C. v. Hyder*, 427 S.W.3d 472, 475 (Tex. App.—San Antonio 2014), pet. granted). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). Interpretation of an unambiguous contract is a question of law and we review the trial court's interpretation of an unambiguous contract under a de novo standard. *EOG Res., Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 701 (Tex. App.—San Antonio 2002, no pet.). In construing an unambiguous deed, our primary duty is to ascertain the parties' intent as expressed by the words of their agreement. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). In doing so, we consider the wording of the deed in light of the circumstances surrounding its adoption and apply the rules of construction to determine its meaning. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). We must give contractual terms their plain and ordinary meaning unless the instrument shows the parties' intent to use the terms in a different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We "examine and

---

[4] Appellant does not take issue with any other portion of the judgment. On appeal, appellees also agree the issue is "whether 'an undivided interest in the 1/8th royalties paid to the landowner(s) upon production of oil, gas and other minerals' reserved a fixed 1/8th royalty or a floating royalty interest."

consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998). "Even if the court could discern the actual intent, it is not the actual intent of the parties that governs, but the actual intent of the parties as expressed *in the instrument as a whole*, 'without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules.'" *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (quoting *Sun Oil Co. v. Burns*, 125 Tex. 549, 552, 84 S.W.2d 442, 444 (1935)).

## FRACTIONAL INTERESTS: FIXED OR FLOATING

"Royalty is commonly defined as the landowner's share of production, free of expenses of production." *Heritage Res., Inc.*, 939 S.W.2d at 121-22. "A mineral-interest owner may create, by conveyance, reservation, or exception, a royalty interest out of either the total production achieved under a lease or from the landowner's royalty." *Graham v. Prochaska*, 429 S.W.3d 650, 656 (Tex. App.—San Antonio 2013, pet. filed). An undivided royalty interest may be conveyed as a fixed fraction of total production or as a fraction of the total royalty interest. *Luckel*, 819 S.W.2d at 464. A conveyance of a fractional royalty transfers a fixed fraction of production of the minerals produced from the land irrespective of the percentage royalty in any subsequently negotiated oil and gas lease. *Dawkins v. Hysaw*, 450 S.W.3d 147, 153 (Tex. App.—San Antonio 2014, pet. filed); *Graham*, 429 S.W.3d at 657; *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644, 647 (Tex. App.—Amarillo 2012, no pet.). On the other hand, if the undivided royalty interest is conveyed as a fraction of the total royalty interest, its amount (as a percentage of production) depends upon the royalty reserved in future leases. *Luckel*, 819 S.W.2d at 464. Thus, in contrast to a fractional royalty, a fraction *of* royalty "floats" in the sense that it transfers a fraction of

whatever royalty interest is reserved by the lessor under an existing mineral lease, or that is retained under a lease made in the future. *Dawkins*, 450 S.W.3d at 153. "Its owner is entitled to a share of mineral production equal to the stated fraction times the royalty retained in the lease." *Moore*, 374 S.W.3d at 647.

In *Dawkins*, this court noted several examples of both types of conveyances. *Dawkins*, 450 S.W.3d at 153. Examples of a fractional royalty, i.e., a fixed royalty, include:

> (1) A one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced;
> (2) A fee royalty of 1/32 of the oil and gas;
> (3) An undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced;
> (4) One-half of the one-eighth royalty interest;
> (5) An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market;
> (6) 1% royalty of all the oil and gas produced and saved.

*Id.* (citing 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.1, at 81 (2014)). Although the wording is different in each of the above conveyances, "the effect is the same in each case: a fraction or percentage of gross production has been granted or reserved as a free royalty." 2 WILLIAMS & MEYERS, § 327.1, at 81. "The owner of the royalty interest is entitled to a share of gross production, free of costs, in an amount fixed by the fractional size of his interest." *Id.* "The amount of production received by the royalty owner will not fluctuate according to the amount of royalty provided for in the lease." *Id.* For example, the owner of a 1/6 royalty interest takes 1/6 of gross production whether the lease provides for a 1/8 royalty, a 1/6 royalty, or a 1/4 royalty. *Id.*

Examples of a fraction *of* royalty, i.e., a floating royalty, include:

> (1) 1/16 of all oil royalty;
> (2) The undivided 2/3 of all royalties;
> (3) One-half interest in all royalties received from any oil and gas leases;
> (4) An undivided one-half interest in and to all of the royalty;

(5) One-half of one-eighth of the oil, gas and other mineral royalty that may be produced;
(6) One-half of the usual one-eighth royalty.

*See Dawkins*, 450 S.W.3d at 153; 2 WILLIAMS & MEYERS, § 327.2, at 83-84.  Thus, for example, the owner of a 1/16 *of* royalty takes 1/16 of whatever royalty the lessor reserves.  2 WILLIAMS & MEYERS, § 327.2, at 87.

In this case, the 1949 deed states as follows:

> There is reserved to each of us signing this deed, except Mrs. Annie Trial, *our undivided interest in and to the 1/8 royalties paid the land owner upon production of oil, gas and other minerals from said 278 acre tract of land* hereby conveyed, and *this royalty interest reserved to each of us* shall be non-participating and perpetual.

> It is agreed and here stipulated that *the 1/8 royalties paid the land owner upon production of oil, gas and other minerals is hereby pooled among all the grantors and grantees to this deed*, except the grantor, Mrs. Annie Trial who shall not participate in said royalties, and *in the case of the production of oil, gas and other minerals from said tract of land, each of the [T]rial heirs named above, except Mrs. Annie Trial, shall share in said royalties equally.*

> It is understood that the said Leo Trial and Alex Trial shall have the right to lease said tract of land for oil, gas or other minerals, without the joinder of the grantors herein, or their heirs or assigns, and that said grantees shall have the right to collect the bonus moneys and delay rentals arising out of said mineral leases, *but in case of production of oil, gas or other minerals from said tract of land in paying quantities each of the Trial Heirs, either grantor or grantee, except Mrs. Annie Trial, shall share equally in said pooled royalties.*

> Of course, Mrs. Lysey and her husband shall only receive one share, and Mrs. Barnett and her husband, one share of *said pooled royalties*, and Mrs. Annie Trial shall not receive any part of *said pooled royalties.*

[Emphasis added.]

Medina asserts the plain language of the deed—"our undivided interest in and to the 1/8 royalties"—unambiguously reserves a fixed 1/8 royalty.  However, our standard of review requires us to "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the [deed] so that none will be rendered meaningless."  *Coker*, 650 S.W.2d at 393.

We determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co.*, 966 S.W.2d at 457.

We begin with the reservation clause, under which six of the grantors reserved unto themselves an "undivided interest in and to the 1/8 royalties paid the land owner upon production of oil, gas and other minerals from said 278 acre tract of land . . . ." At the time the deed was executed, the land was not subject to a mineral lease of any type.[5] However, the language of the deed clearly indicates the grantors envisioned the possibility of future production from the land, and, therefore, the possibility that the grantees would enter into mineral leases in the future that paid a royalty upon production of oil, gas, or other minerals from the land. The language used in this paragraph—standing alone—bears some similarity to language that has been interpreted as stating a fixed royalty.[6] But we may not read this language in isolation. *See Coker*, 650 S.W.2d at 393 ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). When the reservation paragraph is

---

[5] Therefore, we are not faced with reconciling a fraction mentioned in the reservation clause with a fraction later mentioned in a future leases clause.

[6] *See Rutherford v. Randal*, 593 S.W.2d 949, 952-53 (Tex. 1980) ("an undivided one two-hundred fortieth (1/240) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land . . . ."); *Harriss v. Ritter*, 154 Tex. 474, 279 S.W.2d 845, 847 (1955) (disagreeing that "one-half of one-eighth of the oil, gas and other mineral royalty" means grantors reserved unto themselves 1/2 of 1/8 royalty and holding "as a matter of law that the term 'one-half of one-eighth of the oil, gas and other mineral royalty' could have but one meaning and that is 1/16th of the royalty on all the oil, gas and other minerals that may be produced from said land"); *Moore*, 374 S.W.3d at 647-48 ("a one-half non-participating royalty interest (one-half of one-eighth of production)"); *Pickens v. Hope*, 764 S.W.2d 256, 258-59, 267 (Tex. App.—San Antonio 1988, writ denied) (holding "an undivided 1/4 of the usual 1/8 royalty in all oil, gas and other minerals produced . . . ." reserved a fixed 1/32 royalty); *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) ("1/2 of the 1/8th royalty (same being a 1/16th of the total production) of oil, gas and minerals" interpreted to mean "1/16th of the total production"); *see also* 2 WILLIAMS & MEYERS, § 327.1, at 81 ("A one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced," "An undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced," "An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market").

read in full and in the context of the entire deed, we do not believe the use of the fraction 1/8 in the paragraph limits the six grantors[7] to a fixed 1/8 royalty.

As early as 1957, the Texas Supreme Court took judicial notice "of the fact that the usual royalty provided in mineral leases is one-eighth." *Garrett v. Dils Co.*, 157 Tex. 92, 96, 299 S.W.2d 904, 907 (1957); *see also Luckel*, 819 S.W.2d at 462 ("One-eighth was the 'usual' royalty so standard in the 1920s and 1930s that all Texas courts took judicial notice of it."). Therefore, we believe the use of the fraction 1/8 "reflects the common misconception of that period that the landowner's royalty would always be one-eighth of production obtained under a lease." *Graham*, 429 S.W.3d at 660 (citing *Concord Oil*, 966 S.W.2d at 460).

The reservation clause also refers to "*the* 1/8 royalties paid the land owner upon production . . . ." [Emphasis added.] Because there was no existing lease on the land when the deed was executed, the word "the" can only be interpreted as referring to the landowner's royalty, *i.e.*, whatever royalty the mineral estate owner might reserve in a future lease. *See Graham*, 429 S.W.3d at 659 ("The use of the word 'the' denotes that 'the one-eighth royalty' is a distinct or particular royalty."). Also, this paragraph speaks in terms of the "royalties paid the land owner," which is indicative of a royalty that "floats" in accordance with the size of the landowner's royalty contained in the lease.

The next two paragraphs also clearly indicate the parties contemplated the possibility of leases in the future. These paragraphs read together recite the parties' agreement, stipulation, and understanding that: (1) Leo and Alex have the right to lease the land for oil, gas, or other minerals without the joinder of the grantors, or their heirs or assigns; (2) Leo and Alex have the right to collect the bonus moneys and delay rentals arising out of any mineral leases; (3) if/when there is

---

[7] There were seven grantors under the deed; however, Mrs. Trial reserved nothing. Therefore, for the purpose of this opinion, our use of "the six grantors" means the six children/grantors.

production of oil, gas, or other minerals on the land, "the 1/8 royalties" paid to Alex and Leo (as the land owners) will be pooled; and (4) Alex, Leo, and their six siblings all share equally in these pooled royalties. Significantly, these two paragraphs repeat three times the agreement that the royalties will be pooled and shared equally among the six grantors and the two grantees.

Based on the above, we conclude the unambiguous language of the 1949 deed expresses the parties' intent that the six grantors reserved an interest in whatever royalty interest is paid to the landowner under any lease, whether present or future, that may be negotiated on the land. Therefore, we hold the deed is properly harmonized to mean that the six grantors reserved unto themselves an undivided interest in a floating royalty.[8]

## CONCLUSION

For the reasons set forth above, we affirm the trial court's judgment in favor of appellees.

Sandee Bryan Marion, Chief Justice

---

[8] Because we conclude the deed is not ambiguous, we do not construe the deed against the grantors. *Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 833 (Tex. Civ. App.—Galveston 1956), writ refused n.r.e.) ("The rule of strict construction against the grantor is resorted to only to resolve ambiguity and as an aid by legal presumption to arriving at intent. It is not applicable in the absence of ambiguity, and even in its presence is never used as a hypercritical and overly literal tool to override the manifest object and purpose of the language of writings.").