

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00694-CV

Robert **LEAL** and Ramiro Leal,
Appellants

v.

**CUANTO ANTES MEJOR LLC**,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 13-02-00041-CVK
Honorable Donna S. Rayes, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  July 1, 2015

AFFIRMED

The parties filed competing motions for summary judgment on the question of whether a deed conveyed a fixed royalty or a floating royalty. The trial court rendered summary judgment in favor of appellee, and decreed the deed conveyed a floating royalty. We affirm.

### BACKGROUND

In 1978, David Martin Phillip sold approximately forty acres of land in Karnes County to Rudy Leal and Henry and Rosalinda Leal. The contract for sale included the following language: "Subject, however, Grantor reserves all minerals and royalties, except, [h]owever, Grantor shall

convey to Grantee a 1/4 non-participating royalty interest." In 1988, David Martin Phillip and his wife, Marguerite W. Phillip, conveyed the forty acres to Andrea Leal, as trustee for Ramiro Leal until Ramiro reached the age of eighteen years, and to Robert Leal.[1] The deed included several exceptions and reservations, including the conveyance of a non-participating royalty interest.

The Phillips later conveyed their mineral interest to appellee, Cuanto Antes Mejor, LLC (hereinafter, "Cuanto"), and entered into an oil and gas lease on 152.2 acres of land, of which the Leals' forty acres is a part. At some point in time, the Leals were asked to sign a Stipulation of Mineral Interest and they received Division Orders, which, according to the Leals, inaccurately quantified their royalty interest. The Leals filed a petition for declaratory judgment asking the trial court to interpret the 1988 deed as conveying to them "an undivided 1/4 interest in and to ALL of the royalty paid on production (1/4 of 8/8 non-participating royalty interest)." Cuanto filed a counterclaim seeking a declaratory judgment that the deed conveyed "a non-participating interest in one-fourth (1/4) of any and all of the royalty paid on production from any oil and gas or other mineral leases on 'subject property' in effect after March 30, 1988, the date of the '1988 Phillip Deed,' including the existing oil and gas lease." The parties later filed competing motions for summary judgment on their respective arguments. The trial court granted Cuanto's motion for summary judgment, denied the Leals' motion for summary judgment, and stated in its summary judgment order that the 1988 deed conveyed "a 'floating' one-fourth (1/4) non-participating interest in and to any royalty paid on production attributable to the 'subject property' . . . ." This appeal by the Leals ensued.

---

[1] This conveyance occurred when the Leals paid the balance due under the 1978 contract for sale. Ramiro Leal has since reached the age of eighteen years.

**STANDARD OF REVIEW**

When both parties file motions for summary judgment, each party must carry its burden and neither party may prevail because the other failed to discharge its own burden. *Pratt v. Amrex, Inc.*, 354 S.W.3d 502, 505 (Tex. App.—San Antonio 2011, pet. denied). When one of the motions for summary judgment is granted and the other is denied, we will determine all questions presented to the trial court. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). We will affirm or reverse the judgment and render the judgment the trial court should have rendered, including judgment for the movant who lost below. *Id.* In this case, each party moved for a traditional summary judgment.

A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

In this appeal, neither party asserts the deed is ambiguous, although they offer competing constructions of the reserved royalty interest. An oil and gas deed is a contract and must be interpreted as a contract. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005); *Chesapeake Exploration, L.L.C. v. Hyder*, 427 S.W.3d 472, 475 (Tex. App.—San Antonio 2014), pet. granted). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). Interpretation of an unambiguous contract is a question of law and we review the trial court's interpretation of an unambiguous contract under a de novo standard. *EOG Res., Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 701 (Tex. App.—San Antonio 2002, no pet.).

In construing an unambiguous deed, our primary duty is to ascertain the parties' intent as expressed by the words of their agreement. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). In doing so, we consider the wording of the deed in light of the circumstances surrounding its adoption and apply the rules of construction to determine its meaning. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). We must give contractual terms their plain and ordinary meaning unless the instrument shows the parties' intent to use the terms in a different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998). "Even if the court could discern the actual intent, it is not the actual intent of the parties that governs, but the actual intent of the parties as expressed *in the instrument as a whole*, 'without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules.'" *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (quoting *Sun Oil Co. v. Burns*, 125 Tex. 549, 552, 84 S.W.2d 442, 444 (1935)).

## FIXED OR FLOATING ROYALTY

A royalty is commonly defined as "the landowner's share of production, free of expenses of production." *Medina Int., Ltd. v. Trial*, 04-14-00521-CV, 2015 WL 3895902, at *3 (Tex. App.—San Antonio June 24, 2015, n.p.h.) (quoting *Heritage Res., Inc.*, 939 S.W.2d at 121-22). "A mineral-interest owner may create, by conveyance, reservation, or exception, a royalty interest out of either the total production achieved under a lease or from the landowner's royalty." *Graham v. Prochaska*, 429 S.W.3d 650, 656 (Tex. App.—San Antonio 2013, pet. denied). An undivided royalty interest may be conveyed as a fixed fraction of total production or as a fraction of the total

royalty interest. *Luckel*, 819 S.W.2d at 464; *Medina Int.*, 2015 WL 3895902, at *3. The conveyance of a fractional royalty transfers a fixed fraction of production of the minerals produced from the land irrespective of the percentage royalty in any subsequently negotiated oil and gas lease. *Dawkins v. Hysaw*, 450 S.W.3d 147, 153 (Tex. App.—San Antonio 2014, pet. filed); *Graham*, 429 S.W.3d at 657; *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644, 647 (Tex. App.—Amarillo 2012, no pet.). "On the other hand, if the undivided royalty interest is conveyed as a fraction of the total royalty interest, its amount (as a percentage of production) depends upon the royalty reserved in future leases." *Medina Int.*, 2015 WL 3895902, at *3. "Thus, in contrast to a fractional royalty, a fraction *of* royalty 'floats' in the sense that it transfers a fraction of whatever royalty interest is reserved by the lessor under an existing mineral lease, or that is retained under a lease made in the future." *Id.*

Examples of a fixed royalty under which a fraction or percentage of gross production has been granted or reserved include:

> (1) A one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced;
> (2) A fee royalty of 1/32 of the oil and gas;
> (3) An undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced;
> (4) One-half of the one-eighth royalty interest;
> (5) An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market;
> (6) 1% royalty of all the oil and gas produced and saved.

2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.1, at 81 (2014).

Examples of a floating royalty under which the amount of production received by the royalty owner fluctuates according to the amount of royalty provided for in the lease include:

> (1) 1/16 of all oil royalty;
> (2) The undivided 2/3 of all royalties;
> (3) One-half interest in all royalties received from any oil and gas leases;

(4) An undivided one-half interest in and to all of the royalty;
(5) One-half of one-eighth of the oil, gas and other mineral royalty that may be produced;
(6) One-half of the usual one-eighth royalty.

*See Dawkins*, 450 S.W.3d at 153; 2 WILLIAMS & MEYERS, § 327. 2, at 83-84.

In this case, the 1988 deed states as follows:

In addition to the above exceptions, there is reserved and excepted unto Grantors [the Phillips] herein, their heirs and assigns, all of the oil, gas and other minerals in, on and under and that may be produced from the above described property except an *undivided one-fourth (1/4) non-participating royalty interest hereinafter specifically conveyed to Grantees* [the Leals] . . . .

*There is specifically conveyed to Grantees herein, their heirs and assigns, an undivided one-fourth (1/4) interest in and to all of the royalty paid on the production* . . . of oil, gas and any and all other minerals. The interest conveyed unto Grantees shall be a non-participating royalty interest and Grantees shall not be required to join in the making of any oil, gas or other mineral lease or leases, whether or not the same contain pooling or unitization clauses, but shall be entitled to *a non-participating interest in and to any royalty paid from the production* . . . of oil, gas and any and all other minerals. [Emphasis added.]

The Leals assert the royalty conveyed in the 1988 deed is fixed for three reasons. First, the grantor reserved all minerals "except an undivided one-fourth (1/4) non-participating royalty interest," which the Leals construe as conveying a fixed royalty because this phrase does not refer to "the" or "of" a royalty and the deed does not refer to a lease, but instead, refers to all the production. Second, the deed conveys a one-fourth interest in and to "all of the royalty *paid on the production*," which the Leals construe as a fixed fraction of total production because, in this instance, the word "the" refers to all production. Third, the Leals contend the deed should be construed against the grantor.[2]

---

[2] Because we conclude the deed is not ambiguous, we do not construe the deed against the grantor. *Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 833 (Tex. Civ. App.—Galveston 1956), writ refused n.r.e.) ("The rule of strict construction against the grantor is resorted to only to resolve ambiguity and as an aid by legal presumption to arriving at intent. It is not applicable in the absence of ambiguity, and even in its presence is never used as a hypercritical and overly literal tool to override the manifest object and purpose of the language of writings.").

Our standard of review requires us to "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the [deed] so that none will be rendered meaningless." *Coker*, 650 S.W.2d at 393. We determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co.*, 966 S.W.2d at 457. Here, the first paragraph of the deed merely states the grantor reserves all oil, gas and other minerals except a one-fourth non-participating royalty interest "hereinafter conveyed" to the grantee. The next paragraph conveys the royalty, quantifies the royalty, and makes clear that the grantee is not required to join in the making of any lease. The language on which the Leals rely— "paid on production" and "paid from the production"—states the grantors' intent that any royalty paid to the grantee will not be paid unless and until there is production of oil, gas, or other minerals on the land. The actual quantity of the royalty, however, is unambiguously expressed as a fraction *of* a royalty—"interest in and to all of the royalty" and "interest in and to any royalty." *See, e.g., Coghill v. Griffith*, 358 S.W.3d 834, 835-36 (Tex. App.—Tyler 2012, pet. denied) (construing "Grantor excepts from this conveyance and reserves unto himself, his heirs and assigns an undivided one- eighth (1/8) interest in and to all of the oil royalty [and] gas royalty" as conveying a floating royalty); 2 WILLIAMS & MEYERS, § 327. 2, at 83-84 (listing "1/16 of all oil royalty" as an example of a floating royalty).

## CONCLUSION

Harmonizing the entire 1988 deed, we conclude the royalty owner is entitled to a share of mineral production equal to the stated fraction times the royalty retained in the lease. Therefore,

the trial court correctly concluded the deed conveyed a floating royalty.  Accordingly, we affirm

the trial court's summary judgment in favor of Cuanto.[3]

Karen Angelini, Justice

---

[3] On appeal, Cuanto asserts it is entitled to recover its attorney's fees as "damages" for the Leals' frivolous appeal. Texas Rule of Appellate Procedure 45 allows an appellate court, after a determination that an appeal is frivolous, to award to the prevailing party "just damages." TEX. R. APP. P. 45. Whether to grant sanctions on appeal is within the discretion of the appellate court. *Herring v. Welborn*, 27 S.W.3d 132, 145 (Tex. App.—San Antonio 2000, pet. denied). As long as a party's argument has a reasonable basis in law and constitutes an informed, good faith challenge to the trial court's judgment, an award of sanctions is not appropriate. *Rother v. Rother*, No. 04-13-00899-CV, 2014 WL 4922898, at *3 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.). Here, although we have overruled the Leals' issue on appeal, we conclude that an award of appellate sanctions is not appropriate. Therefore, Cuanto's request for sanctions on appeal is denied.