Benedict G. WENSKE and Elizabeth
Wenske, Appellants,

v.

Steve EALY and Deborah
Ealy, Appellees.

NUMBER 13–15–00012–CV

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed January 28, 2016

Hon. Adam T. Uszynski, for Appellant.

Hon. Robert C. McKay, Hon. Robert Maiden, for Appellee.

Before Chief Justice Valdez and Justices Rodriguez and Perkes

## MEMORANDUM OPINION

Memorandum Opinion by Chief Justice Valdez

Appellants, Benedict G. and Elizabeth Wenske, challenge the trial court's grant of traditional summary judgment in their cause of action for declaratory judgment in favor of appellees, Steve and Deborah Ealy. By one issue, appellants contend that as a matter of law they own 3/8ths of the minerals and 3/8ths of the royalties, unburdened by an outstanding 1/4th nonparticipating royalty interest (NPRI) belonging to former owners of the property.[1] We affirm.

### I. BACKGROUND

In 1988, appellants purchased approximately fifty-five acres from, among others, Mahan Vyvjala and Margie Novak (the "1988 Deed"). Out of this conveyance, Vyvjala reserved a 1/8th NPRI and Novak reserved another 1/8th NPRI—resulting in a total reservation of 1/4th of the royalty estate. The NPRI from the 1988 Deed states, in relevant part, the following:

> Anything in the foregoing conveyance to the contrary notwithstanding, it is expressly agreed and stipulated that out of the sale hereby made there is expressly excepted and reserved to the grantors herein, [Vyvjala] and [Novak], their heirs and assigns ... an undivided one-fourth (1/4) interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline and royalty in other minerals in and under and *that may be produced* from the above de-

---

1. Specifically, appellants argue that the trial court erred in concluding that both their 3/8th interest and the Ealy's 5/8ths interest in minerals shared the burden of the outstanding NPRI in proportion to their ownership of the minerals.

scribed tract or parcel of land for a period of twenty-five years.... [ (Emphasis added).] .

....

In the event any existing or future oil, gas and/or minerals lease provides for a royalty in excess of one-eighth (1/8) then grantors herein [Vyvjala] and [Novak], shall share in said royalty provided for in such lease or leases to the extent of an undivided one-fourth (1/4) thereof.

....

In the event that [appellants], their heirs, executors, administrators or assigns, in the status of fee owner or fee owners of any portion [of the land], or any interest therein, shall develop and/or operate said tract or parcel of land, or any portion thereof, in the production of oil, gas, or other minerals therefrom, then [Vyvjala and Novak], shall own and be entitled to receive as a free royalty, free and clear of all costs and expenses, one-fourth (1/4th) of the oil, gas and/or other minerals produced and saved under any such operation.

In 2003, appellants sold the property to the Ealys, reserving an undivided 3/8ths of all oil, gas, and other minerals, in and under, and that may be produced from the property (the "2003 Deed"). The conveyance to the Ealys was made specifically subject "to several Reservations and Exceptions to Conveyance and Warranty 'for all purposes,'" which included the NPRI. Thus, appellants reserved 3/8ths of the mineral estate, and the Ealys received 5/8ths of the mineral estate. The Reservation in the 2003 Deed states the following:

For [appellants and appellants'] heirs, successors, and assigns forever, a reservation of an undivided 3/8ths of all oil, gas, and other minerals in and under and *that may be produced* from the Property. If the mineral estate is subject to existing production or an existing

lease, the production, the lease, and the benefits from it are allocated in proportion to ownership in the mineral estate.

(Emphasis added). The Exception from the 2003 Deed states the following:

Undivided one-fourth (1/4) interest in all of the oil, gas, and other minerals in and under the herein described property, reserved by [Vyvjala], et al. for a term of twenty-five (25) years in an instrument recorded in Volume 400, Page 590 of the Deed Records of Lavaca County, Texas, together with all rights, express or implied, in and to the property described herein arising out of or connected with said reserved interest and reservation reference to which instrument is here and now made for all purposes.

In 2011, appellants executed an oil and gas lease providing for a royalty payment on oil and gas production from the property. Contemporaneously, the Ealys also leased their share of the mineral estate.

In 2013, appellants filed a petition for declaratory judgment requesting a declaration that appellants were "the owners of an undivided 3/8ths interest in the oil, gas, and other minerals lying in, on and under the subject property which interest does not bear any portion of the royalty reserved under the 1988 deed." In plain terms, appellants argued that they had taken their 3/8ths interest free and clear of the 1/4th NPRI that had been reserved to Vyvjala and Novak, which they contended should be deducted solely from the Ealys' 5/8ths interest.

The Ealys filed an answer and counter claim requesting a declaration

that when properly construed, the [2003] Deed reserved unto [appellants] therein, 3/8ths of all oil, gas and other minerals in and under the Land and conveyed unto [the Ealys] 5/8ths of all oil, gas and other minerals in and under the Land

and that the interest reserved and conveyed each bear the Vyvjala Reserved Interest proportionately.

Both parties moved for summary judgment.

The trial court granted the Ealys' motion for traditional summary judgment concluding that the 2003 Deed conveyed to the Ealys "a 5/8ths mineral interest in fee as well as all of the surface in the Property" and "[t]hat the 3/8ths mineral interest reserved by [appellants] and the 5/8ths mineral interest conveyed to the [Ealys] in the Deed will proportionately bear in accordance with the reserved and conveyed mineral interests in the [2003] Deed." Thus, appellants' and the Ealys' mineral estates would share the burden of the 1/4th NPRI in proportion to the fractional interests; 3/8ths of the NPRI (a 3/32nds interest) would be carved out of appellants' mineral estate and 5/8ths of the NPRI (a 5/32nds interest) would be carved out of the Ealys' mineral estate. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

■■■ In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The construction of a deed is a question of

law for the court, where the primary duty of the court is to ascertain the intent of the parties within the four corners of the deed. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). Thus, our review of a deed is de novo.[2] *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex.App.—San Antonio 2011, pet. denied).

■■■ "A [NPRI] is an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015). A NPRI is non-possessory because it does not entitle its owner to produce the minerals himself and only entitles its owner to a share of the production proceeds, free of the expenses of exploration and production. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). "A NPRI is an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty...." *KCM Fin.*, 457 S.W.3d at 75.

## III. DISCUSSION

■ Appellants argue that the 2003 Deed conveyed the burden of the NPRI solely to the Ealys. Thus, appellants claim that they could reserve an interest in the mineral estate without the burden of the NPRI. As support, appellants point to the following portion of the 2003 Deed:

Grantor, for the Consideration and *subject to the Reservations from Conveyance and the Exceptions to Conveyance*

---

**2.** We review the granting of a traditional motion for summary judgment de novo to determine whether a party's right to prevail is

established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.— Dallas 2000, pet. denied).

*and Warranty*, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. [ (Emphasis added) ].

The Ealys respond that the NPRI comes out of the entire mineral estate. Both parties rely on construction of the 2003 Deed; however, to determine the rights of the NPRI owners, we must construe the 1988 Deed first.

 The mineral estate and the royalty estate are two separate and distinct estates. *Extraction Res., Inc. v. Freeman*, 555 S.W.2d 156, 158–59 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

"The words 'Royalty,' 'Bonus,' and 'Rentals,' each and all have a separate, distinct and well established meaning in the oil and gas business." There are varying forms of these estates, which we do not need to discuss, but it is important to note that each can be separately conveyed or reserved, and *when so conveyed or reserved, they become separate estates.* In Texas, oil and gas in place are, by the established rules of property, a part of the realty or corpus of the land and as such are subject to ownership, severance, conveyance, lease, and taxation. This includes royalty.

*Id.* (internal citations omitted, emphasis added).

The 1988 Deed's reservation states that an undivided 1/4th "interest in and to all of the oil *royalty*, gas *royalty*, and *royalty* in casinghead gas, gasoline and *royalty* in other minerals in and under and *that may be produced* from the above described tract" was reserved in favor of Vyvjala and Novak.[3] (Emphasis added.) Thus, Vyvjala and Novak own a portion of the separate royalty estate, in the form of a NPRI, which *"entitles its owner[s] to a share of the production proceeds ...."* *Plainsman Trading Co.*, 898 S.W.2d at 789 (emphasis added). The 1988 Deed entitled Vyvjala and Novak to a 1/4th share of the royalty proceeds that may be produced from the land described in the deed. *See Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex.App.—Fort Worth 2008, pet. denied) ("The amount to be paid to the [NPRI] owner is determinable upon the execution of some future [mineral] lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in the [mineral] lease."). Furthermore, the 1988 Deed clearly states that if *any portion* of the land, *or any interest* shall be developed and/or operated for the production of oil, gas, or other minerals, then Vyvjala and Novak "shall own and be entitled to receive as a free royalty, free and clear of all costs and expenses, one-fourth (1/4th) of the oil, gas and/or other minerals produced" from the land or any portion of the land. (Emphasis added).

 When Vyvjala and Novak reserved a 1/4th interest in the royalty estate, the entire mineral estate had been conveyed to appellants. Thus, had appellants leased the mineral estate, Vyvjala and Novak would have received 1/4th of the royalties from production on the land, and appellants would have received a 3/4th share of the royalties. After the conveyance in 2003, appellants and the Ealys were the owners of separate mineral interests and became the owners of the mineral

**3.** In the 1988 Deed, Vyvjala and Novak reserved a fractional share of the royalty, which " 'floats' in accordance with the size of the landowner's royalty contained in the [oil and gas] lease...." *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex.App.—Fort Worth 2008, pet. denied).

rights as tenants in common. *See Amundson v. Gordon,* 134 Mont. 142, 328 P.2d 630, 634 (1958). "Each tenant in common as the owner of a mineral interest may separately lease such mineral interest." *Id.* However, the 1988 Deed controls the nature of Vyvjala's and Novak's royalty estate, and the 1988 Deed did not grant appellants any interest in the NPRI. *See Duhig v. Peavy–Moore Lumber Co.,* 135 Tex. 503, 506, 144 S.W.2d 878, 879 (1940) ("The deed, of course, does not actually convey what the grantor does not own.").

█ Because the 1988 Deed reserved for Vyvjala and Novak a royalty interest that is carved out of the total production achieved under a mineral lease, it is considered a fraction of royalty or floating royalty. *See Medina Interests, Ltd. v. Trial,* 469 S.W.3d 619, 623 (Tex.App.—San Antonio 2015, pet. filed). When a fraction of royalty is reserved or conveyed, "its amount (as a percentage of production) depends upon the royalty reserved in future [mineral] leases." *Id.* In this case, the amount of royalties that Vyvjala and Novak receive depends on the royalty reserved in any mineral leases for the total production of those minerals from the land. *See id.* Thus, Vyvjala and Novak are entitled to 1/4th of the royalties from any production of minerals from the entire mineral estate, which includes appellants' 3/8th interests in the mineral estate. *See KCM Fin.,* 457 S.W.3d at 75 (explaining that the royalty estate is carved out of the mineral estate).

It appears that appellants claim that by making an exception in the 2003 Deed, although Vyvjala and Novak will still receive 1/4th of the royalties from production on the entire mineral estate, only the Ealys must pay the amount of the royalties,

even if the royalties come from production on appellants' portion of the mineral estate.[4] Appellants cite *Bass v. Harper,* arguing that the phrase "subject to," as used in the 2003 Deed, is an absolute limitation on the scope of the conveyance and operates to make the Ealys wholly responsible for the NPRI. 441 S.W.2d 825 (Tex. 1969). However, in *Bass,* the disputed conveyance dealt solely with fractional ownership of the minerals themselves, and *Bass* says nothing about how to apportion a separate royalty estate that corresponds with the minerals. *See id.* Rather, because the 2003 Deed provides no guidance on this apportionment, we agree with the Ealys that the default rule should apply: "Ordinarily the royalty interest . . . would be carved proportionately from the two mineral ownerships . . . ." *Pich v. Lankford,* 157 Tex. 335, 302 S.W.2d 645, 650 (1957)

█ Moreover, the exception in the 2003 Deed states that Vyvjala and Novak own an undivided one-fourth (1/4) *interest in all of the oil, gas, and other minerals in and under the land* for a term of twenty-five (25) years. (Emphasis added). Vyvjala and Novak do not own a 1/4th interest in the mineral estate. *See Watkins v. Slaughter,* 144 Tex. 179, 182, 189 S.W.2d 699, 700 (1945) ("Ha[d] the foregoing [clause stating to grantee, 'Together with a 15/16 interest in and to all the oil, gas and other minerals in and under and that may be produced from said land and the grantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land'] been the whole of what the deed contained as to the mineral interest conveyed and the mineral in-

---

4. To the extent that appellants argue that the NPRI is only attached to the Ealys' 5/8ths portion of the mineral estate, we disagree

because that would decrease the amount of royalties Vyvjala and Novak would receive.

terest reserved, [the Grantor] would have reserved merely a 1/16 mineral fee interest."); *see also Leal v. Cuanto Antes Mejor LLC*, No. 04-14-00694-CV, 2015 WL 3999034, at *3 (Tex.App.—San Antonio July 1, 2015, no pet.) (setting out examples of grants of fraction royalties and fraction of royalties, which all include the term "royalty"). The 1988 Deed clearly states, as previously explained, that Vyvjala and Novak have a 1/4th interest *in the royalties* produced from the land. The 2003 Deed does not even mention royalties. Therefore, we disagree with appellants that they could be unburdened by the NPRI simply by stating in the 2003 Deed that they conveyed the property to the Ealys "subject to" the exception without even mentioning anything about royalties or that the portions of the royalty estate owned by Vyvjala and Novak would be paid entirely by the Ealys.[5] We agree with the Ealys that a deed will convey every interest held by the grantor except that which is clearly reserved or excepted. *See Day & Co. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 668 (Tex. 1990) (citing *Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1957)). Here, all that appellants reserved was a 3/8ths mineral interest, and they excepted from the conveyance a 1/4th interest to Vyvjala and Novak (presumably the NPRI).[6] However, in certain circumstances, an exception will have the same legal effect as a reservation when the excepted interest remains with the grantor, and here, the excepted interest did not remain with appellants. *See Pich v. Lankford*, 157 Tex. 335, 302 S.W.2d 645, 650 (1957). Thus, for the foregoing reasons, we cannot conclude as appellants argue that the exception in the 2003 Deed conveyed the entire burden of the NPRI to the Ealys.[7]

Accordingly, based on our de novo review, we conclude that the Ealys established their entitlement to summary judgment as a matter of law. *See Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.—Dallas 2000, pet. denied). We overrule appellants' sole issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

---

5. Appellants and the Ealys appear to agree that appellants could have somehow conveyed the entire burden of the NPRI to the Ealys. However, in this memorandum opinion, we have not made such a determination of this issue as it is not dispositive. *See* TEX.R.APP. P. 47.1.

6. Neither appellants nor the Ealys address the 2003 Deed's statement that Vyvjala and Novak owned a 1/4th interest in the mineral estate.

7. We further note that the Texas Supreme Court has held that appellants, who originally solely owned the executive rights, owed Vyvjala and Novak a fiduciary duty. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 82 (Tex. 2015) (providing that an "executive has a largely unfettered hand in negotiating and structuring a mineral lease, that discretion is circumscribed by the duty owed to a nonexecutive").