Opinion by: Marialyn Barnard, Justice
This is an appeal from a trial court's order granting summary judgment in favor of appellees U.S. Shale Energy II, LLC ("U.S. Shale"), Raymond B. Roush, Ruthie Ann Roush Dodge, and David E. Roush (collectively "the Bryan Heirs") and awarding them attorney's fees. The underlying dispute involves the interpretation of a nonparticipating royalty interest reserved in a 1951 warranty deed. On appeal, appellants Laborde Properties, L.P. and Laborde Management, LLC (collectively "Laborde"), argue the trial court erred in: (1) granting summary judgment in favor of U.S. Shale and the Bryan Heirs, thereby declaring the 1951 warranty deed reserved a floating nonparticipating royalty interest ("NPRI") as opposed to a fixed NPRI; (2) denying its motion for summary judgment regarding its counterclaims to quiet title and recover overpayment of royalties to U.S. Shale and the Bryan Heirs; and (3) awarding attorney's fees to U.S. Shale and the Bryan Heirs. We reverse the trial court's summary judgment in favor of U.S. Shale and the Bryan Heirs and render judgment that the reserved NPRI is a fixed interest equal to one-sixteenth (1/16) of production. We also reverse the trial court's award of attorney's fees and remand the issue of attorney's fees to the trial court for reconsideration in light of this court's opinion relating to the nature of the reservation. As we discuss below, the issues relating to Laborde's claims to quiet title and recover alleged overpayments are not before this court, having been severed and abated in the trial court.
BACKGROUND
The crux of this dispute centers on the interpretation of a NPRI reserved in a 1951 warranty deed. Specifically, the parties agree a NPRI was reserved in the 1951 deed, but disagree whether the NPRI reserved therein is a fixed NPRI equal to one-sixteenth (1/16) of production or a floating NPRI equal to one-half (1/2) of royalty. Laborde asserts the NPRI is a fixed interest entitling U.S. Shale and the *743 Bryan Heirs to one-sixteenth (1/16) of production; U.S. Shale and the Bryan Heirs contend it is a floating interest entitling them to one-half (1/2) of royalty or one-tenth (1/10) of production.
The underlying facts are not in dispute. On January 6, 1951, grantors J.E. Bryan and Minnie H. Bryan conveyed all right, title, and interest in a tract of Karnes County real property to grantee S.E. Crews. In that same deed, the grantors reserved a NPRI. The reservation provision states:
There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production. This reservation is what is generally termed a nonparticipating Royalty Reservation....
U.S. Shale and the Bryan Heirs are the successors-in-interest to the original grantors, i.e., they are current owners of the NPRI J.E. and Minnie reserved in the 1951 warranty deed. Laborde ultimately became the successor-in-interest to grantee S.E. Crews when, on July 9, 2010, it acquired a portion of the real property described in the 1951 deed. As successor-in-interest, Laborde acquired all right, title, and interest in the real property, subject to the NPRI owned by U.S. Shale and the Bryan Heirs. When Laborde acquired the property, the property was subject to an oil and gas lease, which provided for a twenty percent (20%) royalty. At the time the dispute arose between Laborde, U.S. Shale, and the Bryan Heirs, the oil and gas lease was held by EOG Resources, Inc. ("EOG Resources") and made up part of the Lake and Emerson Unit in Karnes County.
After receiving a division order from EOG Resources, Laborde disputed the amount of royalty payments it was receiving. According to Laborde, EOG Resources was improperly reducing the royalty payments due to Laborde under the lease because EOG Resources was erroneously categorizing U.S. Shale's and the Bryan Heirs' NPRI as a floating interest equal to one-half (1/2) of royalty rather than a fixed NPRI equal to one-sixteenth (1/16) of production. In other words, Laborde claimed that by categorizing the NPRI as a floating as opposed to a fixed interest, EOG Resources was over calculating the amount of royalty payments due to U.S Shale and the Bryan Heirs because it was calculating their payment as a floating one-half (1/2) of the lease's twenty percent (20%) royalty, i.e., one-tenth (1/10) of production, rather than a fixed one-sixteenth (1/16) of production. Thus, Laborde believed its royalty payments under the lease were being reduced by the improper overpayment of one-tenth (1/10) of production to U.S. Shale and the Bryan Heirs as opposed to one-sixteenth (1/16) of production to U.S. Shale and the Bryan Heirs.
By letter dated January 12, 2015, Laborde notified EOG Resources of its disagreement with the EOG Resources royalty payment. In response, EOG Resources suspended payments regarding the disputed interest pending proper construction of reservation language in the 1951 warranty deed. U.S Shale and the Bryan Heirs subsequently filed suit for declaratory judgment, asking the trial court to declare the 1951 warranty deed reserved a floating NPRI, and under the current oil and gas lease, their royalty is equal to one-half (1/2) of twenty percent (20%), i.e., one-tenth (1/10) of production. Laborde counterclaimed, asking the trial court to declare the 1951 warranty deed reserved a fixed NPRI equal to one-sixteenth (1/16) of *744 production, or alternatively, to quiet title to its royalty interest. Laborde also sought recovery of the overpayment of royalty to U.S. Shale and the Bryan Heirs and attorney's fees. All parties filed motions for summary judgment requesting the trial court declare whether the NPRI reserved in the 1951 warranty deed was a fixed or floating interest. Laborde also sought summary judgment on its claim for recovery regarding the overpayment of royalties to U.S. Shale and the Bryan Heirs and its alternative claim to quiet title.
The trial court granted partial summary judgment in favor of U.S. Shale and the Bryan Heirs, declaring the 1951 deed reserved a floating NPRI equal to one-half (1/2) of royalty. According to the summary judgment, under the current lease, which provides for a one-fifth (1/5) or twenty percent (20%) royalty, U.S. Shale and the Bryan Heirs are entitled to a one-tenth (1/10) royalty, i.e., one-half (1/2) of twenty percent (20%). Subsequently, the trial court awarded U.S Shale and the Bryan Heirs attorney's fees, thereby rendering a final judgment. Laborde then perfected this appeal.
ANALYSIS
On appeal, Laborde first contends the trial court erred in granting summary judgment in favor of U.S. Shale and the Bryan Heirs on their declaratory judgment action, arguing the trial court misinterpreted the 1951 warranty deed by concluding the reserved NPRI was a floating as opposed to a fixed interest. According to Laborde, the 1951 deed-by its plain and unambiguous language and under the greatest possible estates rule-reserved a fixed NPRI equal to one-sixteenth (1/16) of production as opposed to a floating NPRI equal to one-half (1/2) of royalty, i.e., one-tenth (1/10) of production under the current lease. Laborde next contends the trial court erred in awarding attorney's fees to U.S. Shale and the Bryan Heirs under the Declaratory Judgment Act because the award was based on an erroneous grant of summary judgment.
I. Nonparticipating Royalty Interest-Fixed or Floating
A. Standard of Review
We review de novo a trial court's ruling on a summary judgment motion. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005) ; Graham v. Prochaska , 429 S.W.3d 650, 654 (Tex. App.-San Antonio 2013, pet. denied). We consider all the evidence in the light most favorable to the non-movant, and indulge all reasonable inferences in favor of the non-movant to determine whether the movant proved there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Valence , 164 S.W.3d at 661 ; Medina Interests, Ltd. v. Trial , 469 S.W.3d 619, 621-22 (Tex. App.-San Antonio 2015, pet. denied) ; Graham , 429 S.W.3d at 654 ; Hausser v. Cuellar , 345 S.W.3d 462, 466 (Tex. App.-San Antonio 2011, pet. denied).
"Where, as here, both parties file motions for summary judgment, and the trial court grants one motion and denies the other, we review all issues presented and enter the judgment the trial court should have entered." Hausser v. Cuellar , 345 S.W.3d at 466 ; see also Medina Interests , 469 S.W.3d at 621 ; Graham , 429 S.W.3d at 654.
B. Applicable Law-Deed Construction
In construing the meaning of a deed, our primary objective is to ascertain the parties' intent as provided in the four corners of the instrument. Medina Interests , 469 S.W.3d at 622 ; Graham , 429 S.W.3d at 655 (citing Luckel v. White , 819 S.W.2d 459, 461 (Tex. 1991) ); Hausser , 345 S.W.3d at 466 (same). This doctrine is known as the "four corners rule," and under *745 it, we examine and consider the entire instrument and harmonize and give effect to all the provisions of the instrument so that none of the provisions will be rendered meaningless. J.M. Davidson, Inc. v. Webster , 128 S.W.3d 223, 229 (Tex. 2003) ; see also Medina Interests , 469 S.W.3d at 622 ; Graham , 429 S.W.3d at 655 ; Hausser , 345 S.W.3d at 466. "No single provision taken alone will be given controlling effect; rather, all the deed provisions must be considered with reference to the whole instrument." Moore v. Noble Energy, Inc. , 374 S.W.3d 644, 647 (Tex. App.-Amarillo 2012, no pet.) (citing Seagull Energy E & P, Inc. v. Eland Energy, Inc. , 207 S.W.3d 342, 345 (Tex. 2006) ); see Medina Interests , 469 S.W.3d at 622 ; Graham , 429 S.W.3d at 655 ; Hausser , 345 S.W.3d at 466. "If different parts of the deed appear contradictory or inconsistent, we strive to harmonize all of the parts and construe the instrument to give effect to all of its provisions." Graham , 429 S.W.3d at 655 ; see also Medina Interests , 469 S.W.3d at 622 ; Hausser , 345 S.W.3d at 466. When construing the language of the deed, we give each word and phrase its plain and ordinary meaning unless doing so would clearly defeat the parties' intent. Graham , 429 S.W.3d at 655 ; Hausser , 345 S.W.3d at 466.
Recently, in Hysaw v. Dawkins , the supreme court explained that in ascertaining the parties' intent, courts are to take a "holistic approach," considering all parts of the conveying instrument and construing words and phrases together, not in isolation. 483 S.W.3d 1, 13 (Tex. 2016). The supreme court reminded reviewing courts that inconsistences are to be harmonized, to the extent possible, by construing the document at issue as a whole. Id. Courts should not rely on mechanical or bright-line rules when determining the parties' intent. Id. The court specifically held we are not to construe deed provisions in isolation, nor are we to determine intent by comparing disputed language to "exemplar phrases that were themselves divorced from context." Id. at 13-14.
Whether an instrument, such as a deed, is unambiguous or ambiguous is a question of law we review under a de novo standard. Graham , 429 S.W.3d at 655 ; Hausser , 345 S.W.3d at 466 (citing Friendswood Dev. Co. v. McDade Co. , 926 S.W.2d 280, 282 (Tex. 1996) (per curiam) ). To make this determination, the trial court must examine the deed as a whole in light of the circumstances present at the time of its execution. Moore , 374 S.W.3d at 647 (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd. , 940 S.W.2d 587, 589 (Tex. 1996) ); Medina Interests , 469 S.W.3d at 622 ; Hausser , 345 S.W.3d at 467 (same). If the deed is subject to two or more reasonable interpretations, then it is considered to be ambiguous, and a fact issue exists as to the parties' intent. Hausser , 345 S.W.3d at 467. An ambiguity does not arise merely because the parties may be advancing conflicting interpretations of the deed's language; rather, for an ambiguity to exist, both parties' interpretations must be reasonable. Id. If a deed is so worded that it can be given "a certain or definite legal meaning or interpretation," then it is considered to be unambiguous. Medina Interests , 469 S.W.3d at 622 ; Hausser , 345 S.W.3d at 467.
C. Application-Deed Construction
With these construction principles in mind, we must determine whether: (1) the 1951 warranty deed is ambiguous or unambiguous; and (2) the NPRI reserved in the 1951 warranty deed is a fixed or floating interest. As to the first question, neither party contends the 1951 warranty deed is ambiguous. Rather, both parties agree the deed is unambiguous; they simply advance conflicting interpretations with regard to the reservation language. See Columbia Gas Transmission Corp. , 940 S.W.2d at 589 *746 (holding that "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."); see also Hausser , 345 S.W.3d at 467. After reviewing the 1951 warranty deed and applying the rules of construction set forth above, we agree the 1951 warranty deed is unambiguous. In other words, we hold the deed is "so worded that it can be given 'a certain or definite legal meaning or interpretation.' " Hausser , 345 S.W.3d at 467 (quoting Coker v. Coker , 650 S.W.2d 391, 393 (Tex. 1983) ). That the parties offer competing interpretations is of no moment. See Columbia Gas Transmission Corp. , 940 S.W.2d at 589. Accordingly, we must ascertain the parties' intent by analyzing the language of the deed as provided within its four corners. See Medina Interests , 469 S.W.3d at 622 ; Hausser , 345 S.W.3d at 466 (citing Luckel , 819 S.W.2d at 461 ).
As to the second question-the main issue in this matter-as indicated above, Laborde contends the 1951 warranty deed should be construed as reserving a fixed royalty interest equal to one-sixteenth (1/16) of production. Laborde argues that by treating the reservation as a floating interest, the trial court failed to comply with the principles of deed construction and gave no effect to the phrase "same being equal to one-sixteenth (1/16) of production." According to Laborde, the reservation provision does not contain any language indicating an intent to create a floating royalty interest. Rather, the reservation begins with language "an undivided one-half (1/2) interest in and to the ... Royalty," which is indicative of reserving a fixed interest, and then ends with language clearly stating the amount and type of interest being reserved, "same being equal to one-sixteenth (1/16th) of production." To support its position, Laborde largely relies on two appellate decisions. First, Laborde relies on this court's opinion Graham v. Prochaska , wherein we acknowledged that the phrase "one-half of the one-eighth royalty," without more, is indicative of fixed royalty language. See 429 S.W.3d at 661. Second, Laborde cites Moore v. Noble Energy,Inc. , in which the Amarillo Court of Appeals held a "one-half nonparticipating royalty interest (one-half of one-eighth of production)" reserved a fixed royalty because there was nothing in the deed to suggest otherwise. See 374 S.W.3d at 650. In Moore , the court made it clear its interpretation was based on the lack of language in the deed suggesting otherwise. Id. Thus, as we did in Graham , our sister court noted that the language cited by Laborde denotes a fixed interest if there is nothing in the deed (or properly referenced outside documents) to suggest otherwise. See Graham , 429 S.W.3d at 661 ; Moore , 374 S.W.3d at 650.
In response, U.S. Shale and the Bryan Heirs contend the 1951 warranty deed reserved a floating royalty interest equal to one-half (1/2) of royalty. They support their interpretation by pointing out the lease operator, EOG Resources, interpreted the language as reserving a floating royalty interest, explaining the additional phrase "same being equal to one-sixteenth (1/16th) of production" is reminiscent of oil and gas leases with a 1/8 royalty (in other words, 1/2 of 1/8 is equal to 1/16 of production). U.S. Shale and the Bryan Heirs also point to this court's opinion, Graham v. Prochaska , as well as our decision in Hausser v. Cuellar , for support. In those cases, this court ultimately held the disputed language was equal to a floating royalty interest. See Graham , 429 S.W.3d at 665 ; Hausser , 345 S.W.3d at 470. However, in both cases we determined the interests at issue were floating interests based on additional language in either the deed or outside documents incorporated into the deed. See Graham , 429 S.W.3d at 665 ; Hausser , 345 S.W.3d at 470.
*747 In general, a mineral interest owner may create by conveyance or, as here, by reservation, a NPRI, out of either the total production achieved under a lease or from his royalty. See Medina Interests , 469 S.W.3d at 622 ; Moore , 374 S.W.3d at 647. A royalty is generally defined as the landowner's share of production, free of production expenses. Medina Interests , 469 S.W.3d at 622. Depending on the language used, the amount of a NPRI may either be a "fixed fraction" of total production , i.e., a fixed or fractional interest, or a "fraction of" the total royalty in an existing or future oil and gas lease, i.e., a floating interest. Medina Interests , 469 S.W.3d at 622 ; Moore , 374 S.W.3d at 647. "A conveyance of a fractional [or fixed] royalty transfers a fixed fraction of production of the minerals produced from the land irrespective of the percentage royalty in any subsequently negotiated oil and gas lease." Medina Interests , 469 S.W.3d at 622 ; see Graham , 429 S.W.3d at 651 ; Moore , 374 S.W.3d at 647. On the other hand, the amount of royalty a "fraction of" royalty transfer depends on the fraction or percentage of royalty reserved in an existing or future oil and gas lease, i.e., it floats. Medina Interests , 469 S.W.3d at 622 ; see Graham , 429 S.W.3d at 651 ; Moore , 374 S.W.3d at 647. "Thus, in contrast to a fractional [or fixed] royalty, a fraction of royalty 'floats' in the sense that it transfers a fraction of whatever royalty is reserved by the lessor under an existing mineral lease, or that is retained under a lease made in the future." Medina Interests , 469 S.W.3d at 622 ; see Graham , 429 S.W.3d at 651 ; Moore , 374 S.W.3d at 647. Thus, how much royalty a fraction of NPRI (or floating NPRI) owner receives depends on the royalty retained in an oil and gas lease. Medina Interests , 469 S.W.3d at 622 (stating owner is entitled to share of production equal to stated fraction multiplied by royalty set out in oil and gas lease); Graham , 429 S.W.3d at 651 ; Moore , 374 S.W.3d at 647.
Whether a deed reserves or conveys a fixed or floating NPRI becomes more complicated when courts consider the "near ubiquitous nature of the 1/8 royalty"-the royalty fraction so commonly found in oil and gas leases that courts took judicial notice of it as "the usual royalty provided in mineral leases." Hysaw , 483 S.W.3d at 9-10, n.9 (citing Garrett v. Dils Co. , 157 Tex. 92, 299 S.W.2d 904, 907 (1957) ); Graham , 429 S.W.3d at 651. We noted this in Graham , stating that "[t]he historical standardization of the landowner's royalty at one-eighth of production has sometimes created confusion in the construction of deeds from that period, where the use of conflicting fractions suggest the parties mistakenly assumed the landowner's royalty would always be one-eighth." 429 S.W.3d at 657. According to the supreme court, the possibility that parties to such deeds assumed future oil and gas leases would contain a one-eighth (1/8) royalty no doubt influenced the way parties described the NPRIs. Hysaw , 483 S.W.3d at 9-10 ; Graham , 429 S.W.3d at 651. However, the supreme court specifically admonished in Hysaw that the possibility that the parties were operating under the assumption that future royalties would always be one-eighth (1/8) cannot alter "clear and unambiguous language" to the contrary under the concept of harmonization.[1] 483 S.W.3d at 10.
*748 In our continuing effort to properly analyze deeds and reservations with regard to the fixed versus floating issue, we have noted numerous examples of both types of conveyances. See Medina Interests , 469 S.W.3d at 623 (citing Dawkins v. Hysaw , 450 S.W.3d 147, 153 (Tex. App.-San Antonio 2014), rev'd , 483 S.W.3d 1 (Tex. 2016) ). As we stated in Medina Interests :
Examples of a fractional royalty, i.e., a fixed royalty, include:
(1) A one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced;
(2) A fee royalty of 1/32 of the oil and gas;
(3) An undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced;
(4) One-half of the one-eighth royalty interest;
(5) An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market;
(6) 1% royalty of all the oil and gas produced and saved[.]
469 S.W.3d at 623. We noted that although each example contained different wording, "the effect is the same in each case: a fraction or percentage of gross production has been granted or reserved as a free royalty." Id. (quoting 2 PATRICK H. MARTIN & BRUCE M. KRAMER , WILLIAMS & MEYERS , OIL AND GAS LAW § 327.1, at 81 (2014) ). Thus, "[t]he owner of the royalty interest is entitled to a share of gross production, free of costs, in an amount fixed by the fractional size of his interest." Id. The lease has no effect on the share the royalty interest owner receives. Id. We went on in Medina Interests to provide examples of a fraction of royalty, i.e., a floating royalty:
(1) 1/16 of all oil royalty;
(2) The undivided 2/3 of all royalties;
(3) One-half interest in all royalties received from any oil and gas leases;
(4) An undivided one-half interest in and to all of the royalty;
(5) One-half of one-eighth of the oil, gas and other mineral royalty that may be produced;
(6) One-half of the usual one-eighth royalty.
469 S.W.3d at 623. The amount an owner of a floating royalty takes is determined by the fractional reservation multiplied by (times) the royalty retained in this lease. Id. Thus, if the royalty interest owner has a one-sixteenth (1/16) of royalty pursuant to the reservation, he is entitled to one-sixteenth (1/16) of whatever royalty is reserved by the lessor. Id.
As we explained above, per the court's recent decision in Hysaw , it is not enough, however, to compare the language in the reservation before us to the examples set out above to determine whether the NPRI at issue is fixed or floating. In Hysaw , the Texas Supreme Court specifically cautioned against merely comparing a deed's language to other phrases in other deeds that were divorced from context. 483 S.W.3d at 9-10. The Hysaw court emphasized that we must ascertain the intent of the parties "from all words and all parts of the conveying instrument" and not derive the meaning of the phrases by comparing it to other phrases out of context. Id. at 13.
Looking at the 1951 warranty deed and heeding the supreme court's admonition to ascertain intent "from all words and parts of the conveying instrument," we begin by noting the deed is a concise, standard deed. See 2 SMITH & WEAVER , TEXAS LAW OF OIL & GAS § 3.2[A], at 3-6-3-6.1. Deeds like this normally begin with a granting clause, which identifies the grantor and the grantee, provides a recital of consideration, and a description of the property being transferred. Id. at 3-6.1. The granting clause is typically followed by a reservation clause, if the grantor intends to retain an interest *749 in the property being conveyed. Id. Finally, most deeds conclude with what is known as a habendum clause, which typically begins with the words "to have and to hold," and describes the duration of the interest conveyed. Id. at 3-6.1-3.7.
The 1951 deed follows this standard form. The deed begins with a granting clause, which identifies the grantors, the grantee, the amount of consideration, and includes general conveyance language and a detailed description of the property. See id. at 3-6.1. This portion of the deed provides no guidance in our determination of whether the reserved interest is fixed or fractional. Leaving the disputed portion of the deed for a moment, we see that immediately after the disputed language, the deed contains what is unquestionably a provision describing the nature of the interest being reserved, i.e., royalty or mineral interest:
This reservation is what is generally termed a nonparticipating Royalty Reservation and the grantors in this deed, their heirs and assigns shall have no interest in bonus payments under future oil, gas or mineral leases, nor shall it be necessary for such grantors to join in or ratify the execution of such lease or leases, the right being expressly granted and assigned to the grantee herein, his heirs and assigns to execute such lease or leases and to receive and retain all bonuses and delay rental from any lease now or hereafter.
This language describes the nature of the reserved interest as a royalty as opposed to a mineral interest. The parties do not dispute this, and case law supports this interpretation. A mineral interest owner, unlike a royalty interest owner, is generally entitled to a proportional amount of bonuses, rentals, and royalties due under a lease. Hysaw , 483 S.W.3d at 9 ; Graham , 429 S.W.3d at 656 (citing Gibson v. Turner , 156 Tex. 289, 294 S.W.2d 781, 786 (1956) ). In the portion of the reservation clause set out above, the owners of the reserved interest have no right to bonuses or delay rentals, which they would be entitled to if the interest was a mineral interest. See Hysaw , 483 S.W.3d at 9 ; Graham , 429 S.W.3d at 656. Thus, the interest reserved, by its terms, is a royalty interest. See Hysaw , 483 S.W.3d at 9 ; Graham , 429 S.W.3d at 656. Moreover, in the habendum clause, which follows the reservation clause, it specifically describes the reservation as a "royalty reservation." However, like the granting clause, this portion of the reservation clause does not speak to the type of royalty interest reserved, i.e., fixed or floating.
As noted, after reservation clause is a habendum clause. A habendum clause describes the duration of the interest conveyed-for a term or in perpetuity. 2 SMITH & WEAVER , TEXAS LAW OF OIL & GAS § 3.2[A], at 3-6.1-3-7. The habendum clause in the 1951 deed starts with the traditional "to have and to hold" language and then states the property described in the granting clause, subject to the royalty reservation, belongs to the grantee, his heirs, and assigned "forever," and that the grantors will defend the grantee from all claims to the contrary. There is nothing in the habendum clause to assist the court in determining whether the royalty reserved was a fixed or floating interest. Thus, after looking to the other provisions in the deed pursuant to the mandate in Hysaw , thereby avoiding the application of a mechanical rule based merely on the disputed language in the reservation, we are left with nothing but the disputed language. See 483 S.W.3d at 13. It is the disputed language, therefore, from which we must determine whether the royalty reserved is a fixed or floating interest.
As set out above, the disputed language in the deed states:
*750 There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production. This reservation is what is generally termed a nonparticipating Royalty Reservation....
(emphasis added). U.S. Shale and the Bryan Heirs point to the first part of the paragraph above-specifically, the "undivided one-half (1/2) interest in and to" language, arguing the parties intended to create a floating interest. They argue, based on our prior decision in Graham , that the additional phrase "same being equal to one-sixteenth (1/16th) of production" does not change the interest to one that is fixed. In Graham , this court had to harmonize the following reservation to determine whether the interest reserved was fixed or floating:
One-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases for oil, gas and other mineral now upon or hereafter given on said land, or any part thereof ... the same being equal to one-sixteenth (1/16th) of all oil, gas, and other minerals of any nature, free and clear of all costs of production, except taxes."
429 S.W.3d at 659-60. This court noted the reservation of "one-half of the royalty to be produced in any and all leases" reserved a floating interest. Id. at 659. However, in isolation the complete phrase "one half (1/2) of the one-eighth (1/8) royalty" typically describes a fixed interest. Id. at 660. We reasoned the reservation, when considered as a whole, described the one-eighth (1/8) royalty as the interest to be provided in all current and future leases , thereby showing an intent "to reserve one-half of the royalty to be provided in current and future leases, and [reflecting] the parties' assumption that the landowner's royalty would always be one-eighth," consistent with the lease in effect at the time of the conveyance. Id. at 660-61. The inclusion of the word "the" and language referencing current and future leases with regard to the one-eighth (1/8) interest allowed the court to objectively determine the parties assumed the landowner's royalty would always be the historical one-eighth (1/8) of production. Id. at 661. Thus, the deed showed the parties' intent to convey one-half (1/2) of any royalty provided in the current and future leases, whatever it might be, but assuming the lease royalties would always be one-eighth. Id. at 660-61. Nevertheless, we still had to harmonize the first part of the clause-which we found described a floating interest-with the second, which provided that the first part was "equal to one-sixteenth (1/16th) of all oil, gas, and other minerals," which standing alone would reserve a fixed royalty interest. Id.
We first found we could harmonize the seemingly conflicting phrases because of the language in the provision specifically referencing "the" one-eighth (1/8) royalty provided for in the current and future leases. Id. at 661. Because we determined the reference to "the one-eighth (1/8)" royalty in current and future leases expressed an assumption that all future lease royalties would be one-eighth (1/8), it followed that the parties would likewise assume the amount of the interest under the current and any future leases would be one-sixteenth (1/16) of production, i.e., 1/2 times 1/8. Id. However, we "confirmed" our conclusion by reference to other provisions in the deed as well as prior deeds creating the interests at issue. Id. at 661-64. We looked to the "intent" clause in the deed, holding it confirmed the parties' assumption of a one-eighth (1/8) royalty in the current and all future leases. Id. at 662.
*751 We then looked at prior deeds, which we held were incorporated in the deed at issue, and found these prior deeds "clarified" that each royalty reservation created was a floating interest. Id. at 663.
Thus, our decision in Graham -that the interest in question was a floating as opposed to a fixed interest-was based on: (1) language in the deed objectively demonstrating the parties' assumption of "the" one-eighth (1/8) royalty in the current and all future leases; and (2) language in prior deeds establishing the creation of a floating interest. Id. at 662-64. Thus, we hold Graham is distinguishable from the instant case based on the court's reliance in Graham of additional language not included in the 1951 warranty deed.
The 1951 deed does not contain any language from which we can objectively find the parties assumed a one-eighth (1/8) royalty in any current or future lease. Rather, the deed at issue merely reserves "an undivided one-half (1/2) interest" in any oil, gas, or minerals that may be produced. It follows that we cannot objectively find the parties assumed, with regard to the "one-sixteenth (1/16) of the production" language, that the reserved interest would always be one-sixteenth (1/16) of production, i.e., 1/2 of 1/8. Moreover, there are no other portions of the deed nor any reference to documents outside the lease to suggest the parties' assumed the use of a continued one-eighth (1/8) lease royalty or that they intended to create a floating interest. Thus, Graham does not compel this court to conclude the royalty reservation in this case is a floating interest.
U.S. Shale's and the Bryan Heirs' reliance on our decision in Hausser is likewise misplaced. As in Graham , in Hausser this court specifically looked to several provisions in the lease-the granting clause, the existing lease clause, and the future lease clause-all of which included royalty reservation language. Hausser , 345 S.W.3d at 467. It was only by harmonizing all three clauses that we were able to determine the amount of the interest at issue and conclude the interest was floating as opposed to fixed. Id. at 470-71.
We agree with U.S. Shale and the Bryan Heirs that in both Graham and Hausser , this court ultimately concluded the disputed language at issue represented an intent to create a floating royalty interest. See Graham , 429 S.W.3d at 665 ; Hausser , 345 S.W.3d at 470. However, in both cases we determined the interests at issue were floating interests based on additional language in either the deed or outside documents incorporated into the deed showing an intent to create a floating interest. See id. Thus, the cases are distinguishable and do not compel this court to hold, as U.S. Shale and the Bryan Heirs suggest, that the reserved interest in this case is a floating interest. We now proceed, in accordance with supreme court authority, to harmonize the disputed portion of the reservation clause, as this is the only portion in the deed that speaks to the amount and nature of the reserved royalty interest.
In isolation, the phrase "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production" appears to be a mix of language used to describe both types of interests. See Medina Interests , 469 S.W.3d at 623. As noted in Medina Interests , referring to an interest as an "undivided one-half interest in and to all of the royalty," which is similar to the first part of the disputed language in the 1951 deed, typically reflects a fraction of royalty or floating interest. 469 S.W.3d at 623. On the other hand, the phrases "an undivided one-sixteenth royalty interest of any oil, gas or minerals that *752 may hereafter be produced" and "an undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market," which are similar to the second part of the disputed deed language, typically reflect a fractional royalty or fixed interest. Id. In harmonizing these provisions, as we must, we hold that when construed together, the language used by the parties shows an objective intent to create a fixed royalty interest equal to one-sixteenth (1/16) of production contrary to the trial court's conclusion.
To hold the disputed language reserves a floating or fraction of royalty, given the absence of language such as that found in Graham , would require this court to ignore "the same being equal to one-sixteenth (1/16) of the production" language. In Graham , we determined the phrase "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals," in the absence of other language, would express an intent to create a fixed interest. Graham , 429 S.W.3d at 660 (citing Watkins v. Slaughter , 144 Tex. 179, 189 S.W.2d 699, 700 (1945) ). However, because other language in the deed established an objective intent to create a floating interest based upon references to "the one-eighth royalty" in the current and future leases, the "same being equal to" language was construed to be nothing more than "a statement of the value that the parties (mistakenly) expected" the reserving party would always have. Id. at 661. In addition, language in prior deeds incorporated into the deed at issue, showed an intent to convey a fraction of royalty, i.e., a floating interest. Id. at 664. But for the additional language in the deed and the language in the prior deeds, our decision might have been different. See Graham , 429 S.W.3d at 666 (Barnard, J., dissenting) ("Admittedly, without reference to the [other deeds], the majority could not reach the conclusion that the 1950 deed reserved ... a floating one-half royalty interest as opposed to a fixed one-sixteenth interest.").
Here, the 1951 warranty deed does not include the critical language relied upon in Graham , i.e., the language from the deed and prior deeds showing an intent to create a floating royalty interest. Specifically, we have no reference in the deed to any current lease, lease royalty, much less a reference to a particular lease royalty, such as "the" one-eighth (1/8) royalty in the Graham deed, that might express an assumption of a particular lease royalty. And, there are no prior deeds or other documents from which we might derive an intent to create a floating interest. In sum, there is no additional language in the 1951 deed or other documents that would permit this court to objectively determine the parties assumed a perpetual lease royalty in any amount. Rather, the plain and ordinary language in the disputed provision describes the reservation as an "undivided one-half interest" in royalties and minerals that may be produced or made, "equal to one-sixteenth (1/16) of production." We hold "the same being equal to one-sixteenth of the production" language qualifies, modifies, or clarifies the preceding undivided one-half language, showing an intent to reserve a fixed one-sixteenth (1/16) interest.[2] Moreover, the specific use of the phrase "of the production" is found in the definition of a fixed interest-a fixed interest is a fixed fraction of total production. " Medina Interests , 469 S.W.3d at 622 (emphasis added); see Moore , 374 S.W.3d at 647. A floating interest, on the other hand, is a fraction of total royalty. Medina Interests , 469 S.W.3d at 622 (emphasis *753 added); Moore , 374 S.W.3d at 647. If the parties had intended to reserve a floating interest, the deed would not have included the phrase "of the production." The lease in Graham does not include a reference to a fraction "of production." 429 S.W.3d at 659-60. Thus, to hold the trial court correctly determined the interest reserved was floating as opposed to fixed would require us to ignore the qualification language, which we may not do. See Hysaw , 483 S.W.3d at 13 ; Graham , 429 S.W.3d at 655 ; Hausser , 345 S.W.3d at 466. Even application of the misconception theory would not change the result.
The misconception theory arises out of the previously mentioned historical standardization of a landowner's lease royalty as one-eighth (1/8). See Hysaw , 483 S.W.3d at 9-10 ; Graham , 429 S.W.3d at 657. The theory presumes that parties from the mid-twentieth century mistakenly assumed a landowner's lease royalty was always set at one-eighth of production. Id. In this case, we hold the theory, contrary to the assertion by U.S. Shale and the Bryan Heirs, supports a determination that the parties to the 1951 warranty deed intended to reserve a fixed NPRI.[3] If the grantors and grantee in this case assumed a one-eighth lease royalty, the reference to a one-sixteenth (1/16) of production (in the absence of the more specific language and outside deeds relied upon in Graham ) shows an intent to reserve an unchanging one-half (1/2) of the assumed one-eighth (1/8) lease royalty, or one-sixteenth (1/16) of production-one-half (1/2) times one-eighth (1/8), i.e., a fixed interest. In Graham , the reference to "one-sixteenth (1/16th)," which the court found was merely a mathematical calculation, did not include, as here, the phrase "of production." The inclusion of the phrase "of the production" in the 1951 warranty deed suggests a different intent from that found in Graham . There is nothing in the disputed language in the 1951 deed to suggest the parties intended the reservation "come out of the landowner's royalty and vary in accordance with that fraction of production," i.e., a floating interest. Graham , 429 S.W.3d at 657-58.
Accordingly, we hold the trial court erred in declaring the 1951 warranty deed reserved a floating NPRI equal to one-half (1/2) of royalty. Rather, under the proper construction, the deed reserves to the grantor a fixed NPRI equal to one-sixteenth (1/16) of production. We now turn to Laborde's counterclaims to quiet title and recover alleged overpayment of royalties, as well as the issue of attorney's fees.
II. Counterclaims to Quiet Title and Recover Overpayment of Royalties
In addition to seeking declaratory judgment with regard to the nature of the reserved interest, Laborde filed counterclaims to quiet title and to recover alleged NPRI overpayments to U.S. Shale and the Bryan Heirs. Laborde moved for summary judgment on these counterclaims. On appeal, Laborde contends the trial court erred in denying its motion for summary judgment as to these claims. However, U.S. Shale and the Bryan Heirs contend these claims are not before this court. We hold these claims are not before us.
The record reflects that in October 2015, the trial court signed an order granting partial summary judgment in favor of U.S. Shale and the Bryan Heirs and denying the partial summary judgment motion of Laborde. In its order, the trial court specifically rendered judgment that the 1951 *754 warranty deed created a floating NPRI. The order did not reference Laborde's counterclaims to quiet title or recover alleged overpayments. Nor did the trial court rule upon U.S. Shale's and the Bryan Heirs' request for attorney's fees. In February 2016, however, the trial court rendered an order awarding attorney's fees to U.S. Shale and the Bryan Heirs.
The parties ultimately filed a "Joint Motion for Severance and Abatement." In that motion, the parties stated:
The only claims not disposed of by the Court's Summary Judgment rulings are those asserted by Defendants Laborde Property, L.P. and Laborde Management, LLC in their counterclaim against [U.S. Shale] and [the Bryan Heirs]. The parties agree that the Court's summary judgment rulings have adjudicated all of [U.S. Shale's] and [the Bryan Heirs'] claims and therefore file this Joint Motion for Severance and Abatement asking the Court to sever from the above-styled and numbered cause all of [U.S. Shale's] and [the Bryan Heirs'] claims against [Laborde] and to abate the claims of [Laborde] against [U.S. Shale] and [the Bryan Heirs'] in the lawsuit until all appeals, if any, have become final.
The parties alleged that in order for the judgment regarding the nature of the royalty reservation to be final, it would be necessary to sever that claim from Laborde's claims to quiet title and recover overpayments. The parties asked the court to abate Laborde's counterclaims until all appeals are exhausted and a judgment regarding the nature of the NPRI is final.
The trial court granted the joint motion, severing the declaratory judgment claims regarding the nature of the reservation, i.e., fixed or floating, and specifically stating:
[T]his is a final severance and makes the Judgment or Judgments entered against [Laborde] regarding [U.S. Shale's] and [the Bryan Heirs'] royalty and attorney's fee claims final and disposes of all parties and all issues in the severed action.
(emphasis added). The trial court further ordered Laborde's counterclaims-to quiet title and recover alleged overpayments-"STAYED AND ABATED" until all appeals are exhausted or the judgment in the severed action becomes final.
A severance divides a lawsuit into two or more separate and independent lawsuits. In re E.I. du Pont de Nemours & Co. , 92 S.W.3d 517, 523 n.21 (Tex. 2002) ; In re K.F. , 351 S.W.3d 108, 112-13 (Tex. App.-San Antonio 2011, no pet.) (citing Hall v. City of Austin , 450 S.W.2d 836, 837-38 (Tex. 1970) ); Law Offices of Robert D. Wilson v. Tex. Univest-Frisco, Ltd. , 291 S.W.3d 110, 113 (Tex. App.-Dallas 2009, no pet.) (same). Upon severance, each suit is thereafter distinct, resulting in separate, appealable final judgments. In re B.T.G. , 494 S.W.3d 839, 842-43 (Tex. App.-Dallas 2016, no pet.) (citing Van Dyke v. Boswell, O'Toole, Davis & Pickering , 697 S.W.2d 381, 383 (Tex. 1985) ).
Here, the record establishes Laborde's counterclaims to quiet title and recover alleged overpayments were severed, stayed, and abated pending the outcome of the royalty dispute. Thus, those claims are now a distinct lawsuit, from which an appeal may be taken upon rendition of a final judgment. See id. Likewise, the royalty claim, which is currently before us, constitutes a distinct lawsuit, a lawsuit in which a final, appealable judgment has been rendered. Id. Accordingly, we hold Laborde's counterclaims to quiet title and recover alleged overpayments are not before this court.
III. Attorney's Fees
Finally, Laborde contends the trial court erred in awarding attorney's fees to U.S.
*755 Shale and the Bryan Heirs under the Declaratory Judgment Act because the award was based on the trial court's grant of summary judgment in their favor on the royalty issue. U.S. Shale and the Bryan Heirs argue that because the trial court properly granted summary judgment in their favor, there is no basis to disturb the award of attorney's fees.
As we recognized in Hausser , under the Declaratory Judgment Act ("the Act"), the trial court may exercise its discretion in awarding attorney's fees. 345 S.W.3d at 471 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015) ). More specifically, the Act qualifies the trial court's discretion as " 'subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.' " Id. (citing Neeley v. West Orange-Cove Consol. Indep. Sch. Dist. , 176 S.W.3d 746, 799 (Tex. 2005) ) (quoting Bocquet v. Herring , 972 S.W.2d 19, 21 (Tex. 1998) ; TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.") ).
In Hausser , we reversed the trial court's summary judgment, holding the trial court improperly construed the deed at issue. Id. Thereafter, with regard to the award of attorney's fees, we declined to address the issue, instead remanding the matter of attorney's fees to the trial court to allow it to reconsider the award in light of our reversal. Id. In support of our decision to remand, we relied upon the supreme court's decision in Neeley wherein the court expressed no opinion on an award of attorney's fees under the Act after the court determined the trial court's judgment was erroneous. 176 S.W.3d at 799. Rather, the court reversed the award of attorney's fees and remanded the matter to the trial court "to reconsider what award of attorney fees, if any is appropriate." Id.
We hold, as we did in Hausser , given our decision to reverse the trial court's summary judgment and render judgment in favor of the opposing parties, we must remand the matter of attorney's fees to the trial court for reconsideration in light of our decision.
CONCLUSION
Based on the foregoing, we hold the royalty reservation in the 1951 warranty deed is a fixed NPRI equal to one-sixteenth (1/16) of production. We therefore reverse the trial court's summary judgment in favor of U.S. Shale and the Bryan Heirs and render judgment in favor of Laborde that the royalty interest reserved is a fixed NPRI equal to one-sixteenth (1/16) of production. Based on the reversal and rendition relating to the reservation, we remand the issue of attorney's fees to the trial court for reconsideration in light of our decision. As to the counterclaims alleged by Laborde regarding quiet title and overpayment, we hold those issues are not before this court based on the trial court's severance order.

As we recognized in Graham , leases with royalties larger than one-eighth (1/8) became much more common in the mid-1970's. 429 S.W.3d at 657 (citing 1 Smith & Weaver , Texas Law of Oil & Gas § 2.4[B][1], at 2-64). The current edition of Smith & Weaver notes that "today, the usual royalty is 1/5 or even 1/4." 2 Smith & Weaver , Texas Law of Oil & Gas § 2.4[B][2], at 2-65 (2016).

The phrase "the same being equal to" is simply another way of saying "in other words," "in short," or "that is."

There is nothing to suggest the theory applies only to show an intent to create a floating as opposed to a fixed interest.